IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K.D.,                                    :    SEALED CASE
                    Petitioner           :
                                         :
             v.                          :
                                         :
Department of Human Services,            :    No. 950 C.D. 2023
                    Respondent           :    Submitted: June 4, 2024


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge (P.)
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                      FILED:  July 16, 2024


          K.D. (Petitioner) petitions this Court for review of the Department of
Human Services (DHS), Bureau of Hearings and Appeals' (BHA) August 17, 2023
order adopting the Administrative Law Judge's (ALJ) Adjudication and
Recommendation that dismissed Petitioner's appeal as untimely filed.  Petitioner
presents one issue for this Court's review: whether the ALJ erred by recommending
that Petitioner's appeal be dismissed as untimely.  After review, this Court affirms.

          On July 21, 2022, DHS notified Petitioner that she was listed on the
ChildLine and Abuse Registry (ChildLine Registry)[1] as a perpetrator of child abuse

_____

          [1] Section 3490.4 of DHS's Regulations defines "ChildLine" as

          [a]n organizational unit of [DHS] which operates a [s]tatewide toll-
          free system for receiving reports of suspected child abuse
          established under [S]ection 6332 of the [Child Protective Services
          Law (]CPSL[), 23 Pa.C.S. § 6332] (relating to establishment of
          [s]tatewide toll-free telephone number), refers the reports for
          investigation and maintains the reports in the appropriate file. . . .

55 Pa. Code § 3490.4.  "The ChildLine Registry is maintained in accordance with the [CPSL.]"
*In re: S.H.*, 96 A.3d 448, 450 n.2 (Pa. Cmwlth. 2014).

(ChildLine Notice). *See* Certified Record (C.R.) at 22. The ChildLine Notice informed Petitioner that she had a right to appeal from DHS's decision and instructed Petitioner that her appeal "**must be postmarked within 90 days of the mailing date listed at the top of th[e] [ChildLine N]otice (i.e., it was due on or before October 19, 2022**)."[2] C.R. at 22 (all emphasis in original). Petitioner forwarded the ChildLine Notice to Francis Genovese, Esquire (Attorney Genovese) a few days after she received it. Petitioner did not pay a retainer fee upon forwarding the notice to Attorney Genovese. Petitioner's husband (Husband), who was also named as a perpetrator, retained Attorney Genovese and paid him a retainer fee. Attorney Genovese subsequently filed a timely appeal on Husband's behalf.

In early October 2022, and before the expiration of the 90-day deadline for Petitioner to file an appeal, Husband received a letter from DHS acknowledging receipt of his appeal. Petitioner did not receive a letter acknowledging receipt of an appeal from her. A few weeks later, eight days past the deadline for filing an appeal, on October 27, 2022, Petitioner contacted DHS and Attorney Genovese regarding the status of her appeal. Petitioner had not spoken to Attorney Genovese prior to October 27, 2022. On October 27, 2022, Attorney Genovese mailed a hearing request to DHS seeking a hearing on Petitioner's behalf. *See* C.R. at 24-25.

On March 8, 2023, the ALJ held a hearing to determine whether Petitioner filed a timely appeal and, if not, whether sufficient grounds existed to allow the appeal to proceed *nunc pro tunc*. On July 18, 2023, the ALJ recommended that Petitioner's appeal be dismissed as untimely filed. On August 17, 2023, the

---

[2] The ChildLine Notice also provided: "**You have a right to a hearing now**. **You can skip the appeal described above and ask the [BHA] for that hearing**. **This request must be postmarked within 90 days of the mailing date listed at the top of this [ChildLine N]otice**." C.R. at 22 (all emphasis in original).

BHA adopted the ALJ's Adjudication and Recommendation in its entirety. Petitioner appealed to this Court.[3]

Initially, Section 6341 of the Child Protective Services Law (CPSL) provides, in relevant part:

> **(a) General rule.--**Notwithstanding [S]ection 6338.1 [of the CPSL] (relating to expunction of information of perpetrator who was under 18 years of age when child abuse was committed):
>
> > (1) At any time, the [S]ecretary [of Human Services (Secretary)] may amend or expunge any record in the [ChildLine Registry] upon good cause shown and notice to the appropriate subjects of the report. The request shall be in writing in a manner prescribed by [DHS]. . . .
> >
> > (2) Any person named as a perpetrator . . . in an indicated report of child abuse may, **within 90 days of being notified of the status of the report**, **request an administrative review by**, **or appeal and request a hearing** before, the [S]ecretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter. The request shall be in writing in a manner prescribed by [DHS].
>
> . . . .
>
> **(c) Review of refusal of request.--**Subject to subsection (c.1), if the [S]ecretary refuses a request under subsection (a)(1) or a request for administrative review under subsection (a)(2), . . . the perpetrator . . . shall have the right to appeal and request a hearing before the [S]ecretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner

---

[3] This Court's review "in an appeal of an adjudication of [DHS] is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact were supported by substantial evidence." *Lil Shining Stars, Inc. v. Dep't of Hum. Servs.*, 140 A.3d 83, 92 n.5 (Pa. Cmwlth. 2016).

inconsistent with this chapter. **The request for hearing must be made within 90 days of notice of the decision**. The appropriate county agency and appropriate law enforcement officials shall be given notice of the hearing. The burden of proof in the hearing shall be on the appropriate county agency. [DHS] shall assist the county agency as necessary.

23 Pa.C.S. § 6341 (text emphasis added).

Petitioner argues that the ALJ erred by recommending that her appeal be dismissed as untimely filed. Specifically, Petitioner contends that because her appeal was filed within a short time after learning of and having an opportunity to address the untimeliness, the elapsed time period was of short duration, and DHS was not prejudiced by the delay, she is entitled to *nunc pro tunc* relief. DHS rejoins that Petitioner cannot avail herself of *nunc pro tunc* status as a result of her own negligence in failing to file a timely appeal. In addition, DHS maintains that Petitioner ignores the initial requirements of seeking *nunc pro tunc* status for an appeal.

This Court has explained:

An appeal *nunc pro tunc* is only warranted . . . in extraordinary circumstances "involving fraud or some breakdown in the court's operation," or where the delay is caused by non-negligent circumstances either by the claimant or a third party. *Cook v. Unemployment Comp. Bd. of Rev.*, . . . 671 A.2d 1130, 1131 ([Pa.] 1996) (internal quotations omitted) (quoting *Bass v. Commonwealth*, . . . 401 A.2d 1133, 1135 ([Pa.] 1979)). The Pennsylvania Supreme Court characterized administrative breakdown as occurring when "an administrative body acts negligently, improperly or in a misleading way." *Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Rev.*, . . . 746 A.2d 581, 584 ([Pa.] 2000). **Where non-negligent circumstances cause the untimeliness of an appeal**, **the appeal must be filed within a short period of time after learning of the untimeliness**. *Cook*, 671 A.2d at 1131. It is well[ ]settled that the burden of demonstrating the necessity of *nunc pro tunc* relief is on the party seeking to

4

file the appeal, and the burden is a heavy one. *Blast Intermediate Unit No. 17 v. Unemployment Comp. Bd. of Rev.,* . . . 645 A.2d 447, 449 ([Pa. Cmwlth.] 1994).

*Harris v. Unemployment Comp. Bd. of Rev.*, 247 A.3d 1223, 1229-30 (Pa. Cmwlth. 2021) (bold and italic emphasis added).

Here, Petitioner does not argue that any extraordinary circumstances involving fraud or a breakdown in the court's operation caused the delay, or that the delay was caused by **non-negligent** circumstances either by Petitioner or a third party. Indeed, at the hearing, Petitioner testified that she sent the ChildLine Notice to Attorney Genovese shortly after she received it. *See* C.R. at 69. However, according to Attorney Genovese, Husband told Attorney Genovese that Petitioner had separate counsel, which Attorney Genovese understood to mean that she had retained other counsel.[4] *See* C.R. at 74. Notwithstanding the miscommunication, although Husband initially paid Attorney Genovese a retainer fee, Petitioner did not pay him a retainer fee until October 27, 2022. *See* C.R. at 74-75.

Further, Petitioner described:

My husband received something in the mail from the offices saying, you know, the appeal has been received or the request for an appeal has been received. And then I was just kind of waiting for my copy of that to come in. And when I didn't get anything, I called, you know, the number or the contact information on - to follow up, just, you know, thinking maybe something got lost in the mail on my end as far as receiving, you know, information that my appeal had been received as well. And at that time[,] I was told by whoever I spoke to and I'm sorry, I don't have that person's name, that there wasn't record of it. So[,] I believe it wasn't until that time in October that then I reached out to [Attorney Genovese's] office asking, like, do you know what's going on with my appeal?

---

[4] Petitioner confirmed that when she received the ChildLine Notice she "had spoken with [Adam] Tanker[, Esquire,] and [she] had spoken to him about the [ChildLine] Notice that [she] had received[.]" C.R. at 66.

5

C.R. at 70.

The ALJ inquired further:

[ALJ]: Okay, and when did [] [H]usband receive that letter saying that [DHS] received an appeal?

[Petitioner]: I want to say he got it in like, you know, sometime in early October, within what would have been those 90, you know, the 90 days or whatever it is, the timing that you have to file it. **And I was just kind of like**, **waiting for a couple of weeks to see if mine came in prior to calling and trying to follow up with the appeal's office on it to see where it stood**.

C.R. at 70-71 (emphasis added).

Notwithstanding whether Petitioner believed Attorney Genovese had filed an appeal on her behalf, knowing she only had 90 days to file an appeal, Petitioner chose to wait until after the appeal deadline had passed before confirming whether an appeal was filed. Thus, it was Petitioner's own negligence that caused the delay in filing her appeal. Therefore, the ALJ properly recommended that Petitioner's appeal be dismissed as untimely. Accordingly, the BHA did not err by adopting the ALJ's recommendation.

For all of the above reasons, the BHA's order is affirmed.

_____
ANNE E. COVEY, Judge

6

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K.D.,
              Petitioner

      v.

Department of Human Services,
              Respondent

:  SEALED CASE
:
:
:
:
:
:  No. 950 C.D. 2023
:

## O R D E R

AND NOW, this 16th day of July, 2024, the Department of Human Services, Bureau of Hearings and Appeals' August 17, 2023 order is affirmed.

 

_____
ANNE E. COVEY, Judge